5

T. SCOTT BELDEN, CSB NO. 184387
LISA HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
 COOPER, ROSENLIEB & KIMBALL, LLP
4550 California Avenue, Second Floor
Bakersfield, California 93309
Telephone: (661) 395-1000
Facsimile: (661) 326-0418
E-Mail: sbelden@kleinlaw.com; lholder@kleinlaw.com

Attorneys for Debtor

FILED
April 14, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002558692

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| In re:<br><br>ACE FINANCIAL CORPORATION,<br><br>Debtor. | Case No. 10-11289-B-11<br><br>Chapter 11<br><br>DC No. KDG - 13<br><br>Date: May 5, 2010<br>Time: 3:00 p.m.<br>Place: Bankruptcy Court<br>    1300 18th Street, Suite A<br>    Bakersfield, California<br>Judge: W. Richard Lee |
|---|---|

MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY
(7801 WALPOLE, CALIFORNIA CITY, CA)

ACE FINANCIAL CORPORATION. ("Debtor"), respectfully represents:

I.      Introduction

   1.   Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code on February 10, 2010. Debtor has managed its affairs as debtor-in-possession since the petition date.

   2.   Debtor owns a duplex located at 7801 Walpole Avenue, California City, CA 93505, Kern County Assessor's Parcel Number 299-062-30-7 ( the "Real Property").

   3.   Debtor requests authority to sell the Real Property to an unrelated third party for $85,000.00. Debtor believe that this is the market value of the Real Property. Mission Bank

claims a perfected security interests in the proceeds of the sale, but agrees that Debtor may sell the Real Property under the terms and conditions described in this motion.

## II. Liens against the Real Property

4. Prepetition, and as part of its normal business operations, Debtor made a construction loan to the builder of the home on the Real Property. The construction loan was secured by a deed of trust against the Real Property in favor of Debtor. Debtor took title to the Real Property after completing a non judicial foreclosure and sale under its deed of trust.

5. The Real Property is subject to the following claims of lien:

| Name | Nature of Security Interest | Amount of Lien |
|---|---|---|
| Kern County Tax Collector | Real Property Taxes | $8,292.43 |
| Mission Bank | UCC-1 | $1,158,829.43 |

6. Mission Bank asserts an interest in the proceeds received from the sale of the Real Property pursuant to its Business Loan Agreement, the Promissory Note, and Commercial Security Agreement with Debtor. Mission Bank filed a UCC-1 Financing Statement with the California Secretary of State on or about December 22, 2003, and a continuation on November 6, 2008, to perfect its security interests as provided in the Business Loan Agreement and Commercial Security Agreement. Copies of the UCC-1 Financing Statements filed by Mission are attached as Exhibit "B" to the Exhibits.

7. The real property taxes are unpaid from tax years 2007, 2008, 2009.

## III. Offer to Purchase

8. Debtor received an offer from Burdette A. Baylis ("Buyer") to purchase the Real Property for $85,000.00. Debtor has no connection with Buyer or persons related to Buyer and Buyer is a "disinterested person" as defined in 11 USC Section 101.

9. Buyer's offer was obtained with the assistance of a real estate broker, IMC Funding Real Estate ("IMC"). Debtor agreed to pay IMC a six percent commission upon the sale of the Real Property, which makes the brokerage fees arising from the proposed sale price about $5,100.00. Debtor filed an *Application by Debtor for Order Authorizing Employment of Real Estate Broker-IMC Funding Real Estate* on March 8, 2010. Debtor believes that six

percent is a standard commission for the sale of residential real property, and is a reasonable fee to pay IMC for its services. The broker commission will be paid out of escrow from the proceeds of the sale. In addition to the broker commissions, other customary closing costs will be paid out of escrow from the proceeds of the sale.

    10.    A copy of the California Residential Purchase Agreement and Joint Escrow Instructions and the Counter Offer No. 1 is attached as Exhibit "A" to the *Exhibits in Support Motion for Order Authorizing Sale of Real Property (7801 Walpole Avenue, California City, CA)* filed concurrently herewith ("the Exhibits"). The offer requires Seller to pay not more than $3,150.00 of Buyer's closing costs and $5,000.00 for repairs necessary to have the property in workable and living condition.

    11.    The offer to purchase the Real Property is subject to higher and better bids received at the time of the hearing.

### IV. Distribution of Proceeds

    12.    Under the Agreement with Mission Bank, the net proceeds received from the sale of the Real Property after paying customary costs of sale, sales commissions, and the real property taxes owed to the Kern County Tax Collector, will be split between Mission Bank and Debtor. Mission bank will receive 85% of the net proceeds out of escrow, and Debtor will receive 15% of the net proceeds.

    13.    The distribution of proceeds described above is consistent with the *Second Order Authorizing Use of Cash Collateral* and the *Stipulation Between Mission Bank and Ace Financial in Support of Second Motion by Debtor for Authority to Use Cash Collateral.*

### V.     Argument

    14.    Debtor requests authorization to sell the Real Property under 11 USC Sections 363(b)(1).

    15.    Under 11 U.S.C. section 363(b)(1), the Debtor may use, sell, or lease, other than in the ordinary course of its business, property of the estate. The Debtor's decision to sell, which is outside of the normal course of its business, must be based on its reasonable business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th cir. 1986). The court

may approve the sale if the Debtor establishes "some articulated business justification" for the transaction. *In re Lionel Corp.*, 722 F2d 1063, 1070 (2d Cir. 1983). *In re Lionel Corp.*, 722 F.22 1063, 1070 (2d Cir.1983); *In re Walter*, 83 B.R. 14 (9th Cir. BAP 1988); *In re Ernst Home Ctr.*, 209 B.R. 974, 979 (Bankr. D. Wash. 1997). Furthermore, the Bankruptcy Court can authorize a sale of an asset of a Chapter 11 estate before the acceptance of and outside of a Plan of Reorganization "when a sound business purpose dictates such action." *In re Stephens Industries, Inc.*, 789 F. 2d 386, 389-390 (6th Cir. 1986); *see also In re Lionel Corporation*, 722 F.2d 1063, 1070 (2d Cir. 1983).

16. These facts constitute an "articulated business justification" for the transaction. The sale of the Real Property is outside of the ordinary course of business conducted by Debtor. Debtor believes the sale of the Real Property before confirmation of a Plan of Reorganization is justified, in the best interest of the estate, and a sound business decision because: (1) Debtor is no longer engaged in the business of hard money lending as it has been in the past; (2) the Real Property is not needed to support Debtor's business; (3) Debtor intends to liquidate its assets in order to pay its creditors; (4) Debtor must sell all of the real property owned by it in order to fund its plan; (5) Debtor does not wish to lose the opportunity to sell the Real Property; and (6) it will allow Debtor to reduce its indebtedness by about $55,000.00 (85% of net).

17. For all those reasons, the proffered sale and division of proceeds is an exercise of Debtor's sound business judgment.

## VI. PRAYER

WHEREFORE, Debtor prays that:

1. The Motion be granted;

2. Debtor be authorized to sell the Real Property to Burdette A. Baylis, or nominee ("Buyer"), for $85,000.00—or to the highest bidder at the time of the hearing for such higher and better price or terms as Debtor may obtain—as described herein;

3. Debtor be authorized to pay customary costs of sale, broker commissions, up to $3,150 of Buyers closing costs, up to $5,000.00 for necessary and needed repairs, and the Kern County Tax Collector out of escrow;

4. Debtor be authorized to pay 85% of the net proceeds of sale to Mission Bank on account of its lien, and retain 15% for the benefit of the estate;

5. Debtor's principal be authorized to execute additional documents as are reasonable and necessary to effectuate the sale to Buyer or the highest bidder, and

6. Debtor be given such other relief as the Court deems to be just and proper.

Date: April 14, 2010

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By _____
T. SCOTT BELDEN,
LISA HOLDER, Attorneys for Debtor

5